## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| **THOMAS MCGINLEY,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Case No. |
| | ) |
| **MERKLE, INC.,** | ) |
| | ) |
| Defendant | ) |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Thomas McGinley, by and through undersigned counsel, hereby complains against Defendant Merkle, Inc. as follows:

## INTRODUCTION

1.      This case arises under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, the Americans with Disabilities Act and amendments thereto ("ADA"), 42 U.S.C. § 12101 *et seq.*, the Maine Human Rights Act ("MHRA"), 5 M.R.S. § 4571 *et seq.*, the Federal Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, the Maine Family Medical Leave Requirements Law ("Maine FMLA"), 26 M.R.S. § 843 *et seq.*; and the common law.

2.      This case challenges the Defendant's: (1) unlawful age discrimination against Plaintiff in violation of the ADEA and the MHRA; (2) disability discrimination against Plaintiff in violation of the ADA and the MHRA; (3) retaliation under the FMLA and Maine FMLA; (4) breach of contract; and (5) promissory estoppel.

1

## THE PARTIES

3.      Plaintiff Thomas McGinley ("MCGINLEY") is an individual residing in the State of Florida.  Prior to 2017, he was a resident of the Town of York, County of York and State of Maine.

4.      Defendant Merkle, Inc. ("Merkle" or "the Company") is a duly authorized foreign corporation and global marketing company that conducts business throughout the United States and internationally.

5.      Defendant has employed more than 500 individuals in each of 20 or more calendar weeks in the current and preceding calendar years.

## JURISDICTION AND VENUE

6.      Prior to filing this Complaint, MCGINLEY filed a charge of discrimination with the Maine Human Rights Commission and the EEOC, and received a notice of right to sue letter pursuant to 5 M.R.S.A. § 4612, sub-§6 and 4622, sub-§1, ¶C, on or about March 9, 2018.

7.      Venue is proper in this Court because all of the discriminatory practices alleged herein occurred in the County of York and State of Maine.

8.      The Court has federal question subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331.

9.      In addition, diversity jurisdiction exists in this case because the parties are not citizens of the same state, Merkle's principal place of business is not located in the same state where MCGINLEY resides, and the matter in controversy exceeds $75,000.00.

## STATEMENT OF FACTS

10.     Merkle hired MCGINLEY to work as its Vice President ("VP") of Marketing Campaign Services beginning on January 2, 2013.

11.     Throughout his employment with Merkle, MCGINLEY's performance met or exceeded the standards of his profession.

12.     Merkle terminated MCGINLEY's employment on April 17, 2017, after he returned from a medical leave protected by both the FMLA and the ADA.

13.     When Merkle fired MCGINLEY, he was 62 years old.

14.     Upon information and belief, after MCGINLEY requested to go out on FMLA leave, Merkle replaced him with an employee who was significantly younger.

15.     Toward the end of MCGINLEY's employment, he was one of the only VPs in the company in his 60s; the remainder of his peers and superiors were individuals in their thirties and forties.

16.     Merkle undertook reorganization and restructuring efforts in or about June of 2016 (hereinafter referred to as the "2016 reorg").

17.     Because the Company's workforce was so heavily comprised of younger employees, MCGINLEY sensed that his job may be at risk in the 2016 reorg.

18.     In the spring of 2016, MCGINLEY reported directly to John Watkins, a Senior VP.

19.     MCGINLEY learned that his division was being merged into another division, which he suspected might prompt Merkle to lay him off and replace him with a younger individual.

20. In the spring or summer of 2016, Neil Gissler became Merkle's Chief Operating Officer.

21. Gissler assigned MCGINLEY the task of shifting workforce capacity over to China as part of the 2016 reorg.

22. MCGINLEY promptly met the objectives assigned by Gissler, receiving praise from Gissler for his efforts.

23. Gissler told MCGINLEY he was a "very experienced manager" who had the ability to help the Company transition and successfully complete the 2016 reorg.

24. At some point in 2016, MCGINLEY began reporting to Ted Stites, who was at least 20 years younger than Plaintiff.

25. As part of the 2016 reorg, MCGINLEY worked with Stites, Gissler, and VP of Human Resources ("HR") Lisa Richer on the creation of a new position for himself that would help the Company achieve the objectives announced by Gissler to transition the workforce merge MCGINLEY's division into another.

26. MCGINLEY offered to work a part-time, reduced hours schedule with a pro-rated salary in this new position, although he made it clear he was also willing to continue working for the Company full time.

27. Stites, Gissler, and Richer said they wanted to keep MCGINLEY in the same full time VP role through the end of 2016, and then transition him to a part-time Business Operations Leader position starting in 2017.

28. The part-time nature of the Business Operations Leader role discussed above was designed to meet the Company's needs, because Gissler requested MCGINLEY's assistance 1

4

day per week going forward, and Stites requested MCGINLEY's assistance two days per week looking ahead to 2017.

29.    When MCGINLEY asked Stites how long the Business Operations Leader role would be viable, Stites assured him that the role was not temporary but instead needed for at least the next 4 years, which was perfect for MCGINLEY who was hoping to retire around that time, after he reached the age of 65.

30.    Merkle asked Plaintiff to write his own job description for the new Business Operations Leader position, which he did.

31.    Throughout these discussions in 2016, Merkle told Plaintiff that he would be offered a severance package if it turned out that the Company did not have a position for him going forward after the 2016 reorg.

32.    The above discussion of severance was not an agreement by MCGINLEY to accept severance in exchange for his separation from employment, because Merkle already had a severance policy in place for employees like Plaintiff who separated from employment without cause.

33.    Based on the above discussions, MCGINLEY understood that his role would be transitioned, but his employment with Merkle would not terminate as a result of the 2016 reorg, because there was an ongoing need for him as a Business Operations Leader.

34.    In December of 2016, MCGINLEY's mother passed away after battling cancer.

35.    Also in 2016, MCGINLEY went through a difficult divorce.

36.    Based on these two life-altering events, MCGINLEY began to suffer from debilitating depression and anxiety.

37.     By January of 2017, MCGINLEY was struggling to focus and complete tasks at work, which his manager (Stites) noted.

38.     MCGINLEY told Stites that he was seeking counseling for depression, and they discussed the possibility of MCGINLEY taking a brief medical leave of absence to deal with his depression and anxiety.

39.     MCGINLEY requested FMLA leave on or about February 1, 2017, but had to delay taking leave until the end of February because the Company needed him to complete various assignments first.

40.     Merkle granted Plaintiff FMLA and he went out of work until April 18, 2017.

41.     MCGINLEY expected to be able to return to work at Merkle following his FMLA leave.

42.     Merkle's Director of Benefits contacted MCGINLEY approximately 10 days before his return to work date to discuss Plaintiff's "smooth transition" back to work.

43.     When MCGINLEY was out on FMLA leave, Merkle hired a younger individual into the Business Operations Leader position Plaintiff was promised.

44.     Approximately one week before MCGINLEY was to return to work, Ted Stites informed him that the Company had hired another individual to work as the Business Operations Leader in Plaintiff's former division.

45.     Stites assured Plaintiff that Merkle still had a continuing role for him as a Business Operations Leader "working on European companies and special senior management projects."

46.     Stites also told MCGINLEY the Company needed him to train the individual hired into the role of Business Operations Leader.

6

47.    Stites informed MCGINLEY that he would report to Monica Johnson upon his return from FMLA leave.

48.    MCGINLEY emailed Johnson on April 12, 2017 to discuss his return to work in her department, but Johnson never responded to him.

49.    Upon information and belief, Johnson is at least 15-20 years younger than MCGINLEY.

50.    Merkle failed to follow its own policies to treat employees in a fair and nondiscriminatory manner during the 2016 reorg.

51.    Merkle failed to comply with the Older Workers Benefit Protection Act ("OWBPA"), which requires companies engaged in reorganization efforts to provide information to employees being asked to sign a waiver about the ages of those employees who are retained and those who are terminated during the restructuring.

52.    MCGINLEY's mental health conditions in the form of depression and/or anxiety constituted a disability under the ADA, because these conditions significantly impacted several major life activities such as working, and they have had an actual duration of more than 6 months.

53.    Based on his manager's suggestion, MCGINLEY requested an FMLA leave from Merkle and went through the process of applying for short-term disability ("STD") benefits.

54.    In unemployment paperwork, Merkle reported that MCGINLEY was unable to work due to his disability.

55.    MCGINLEY has a record of a disability, which Merkle knew at the time it failed to accommodate him by allowing him a leave of absence.

56.    Merkle failed to engage in the interactive process with MCGINLEY and instead hired a non-disabled employee to replace him.

57.    Defendant unlawfully discriminated against MCGINLEY with malice or with reckless indifference to his state and federally protected rights.

58.    Defendant knowingly and willfully retaliated against MCGINLEY for requesting a leave of absence pursuant to the FMLA and/or the ADA.

59.    Defendant's conduct amounted to a willful and knowing violation of MCGINLEY's state and federally protected rights.

**COUNT I – AGE DISCRIMINATION
IN VIOLATION OF THE ADEA
(29 U.S.C. § 621 *et seq*.)**

60.    Plaintiff repeats the allegations contained in Paragraphs 1 through 59 as if fully stated herein.

61.    Defendant Merkle took adverse employment action against MCGINLEY as a direct and proximate result of his age.

62.    Defendant showed discriminatory bias toward older workers by retaining similarly situated younger employees who were less qualified than MCGINLEY in its 2016 reorganization, and/or hiring a younger, less experienced employee to replace him.

63.    Merkle's failure to comply with the OWBPA during the 2016 reorg constitutes evidence of age-related bias.

64.    Unlawful age discrimination has taken place within the meaning of the ADEA.

65.    Merkle discriminated against Plaintiff on the basis of age knowingly or with reckless disregard for whether its conduct was prohibited by the ADEA.  Because Merkle's

discrimination was willful, MCGINLEY is entitled to liquidated damages of twice the amount of his lost wages.

66.     As a result of Defendant's discriminatory actions, MCGINLEY has suffered and is entitled to damages, including but not limited to: lost wages and benefits, front pay, compensatory damages including emotional pain and suffering and lost enjoyment of life, liquidated damages, attorney's fees, costs and expenses.

WHEREFORE, Plaintiff Thomas McGinley requests that the Court award him damages in the form of lost back pay, front pay, compensatory damages, liquidated damages, punitive damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to him by law.

## COUNT II – DISABILITY DISCRIMINATION UNDER THE ADA
### (42 U.S.C. § 12101 *et seq.*)

67.     Plaintiff repeats the allegations contained in Paragraphs 1 through 66 of his Complaint as if fully set forth herein.

68.     At all times herein relevant, MCGINLEY was a qualified individual with a disability within the meaning of the ADA.

69.     Defendant engaged in unlawful disability discrimination against MCGINLEY in violation of the ADA.

70.     Defendant's stated reasons for terminating MCGINLEY were really pretext for disability discrimination.

71.     Defendant regarded MCGINLEY as being disabled.

72.     Defendant failed to engage in any interactive process with MCGINLEY when he requested a leave of absence for a disabling medical condition.

73.    Defendant failed to provide MCGINLEY with any reasonable accommodations that were necessary for his obvious disability in order to perform the essential functions of his job, or the Business Operations Leader job that he had been promised.

74.    As a result of Defendant's discriminatory actions, MCGINLEY has suffered and is entitled to damages, including but not limited to: lost wages and benefits, front pay, compensatory damages including emotional pain and suffering and lost enjoyment of life, attorney's fees, costs and expenses.

WHEREFORE, Plaintiff Thomas McGinley requests that the Court award him damages in the form of lost back pay, front pay, compensatory damages, liquidated damages, punitive damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to him by law.

## COUNT III – VIOLATION OF THE MAINE HUMAN RIGHTS ACT
### (5 M.R.S. § 4571 *et seq.*)

75.    Plaintiff repeats the allegations contained in Paragraphs 1 through 74 as if fully stated herein.

76.    For all of the reasons set forth in Counts I and II above, unlawful discrimination against Plaintiff on the basis of age and disability have taken place within the meaning of the Maine Human Rights Act.

WHEREFORE, Plaintiff Thomas McGinley requests that the Court award him damages in the form of lost back pay, front pay, compensatory damages, liquidated damages, punitive damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to him by law.

## COUNT IV – RETALIATION IN VIOLATION OF THE FMLA
### (29 U.S.C. § 2601 *et seq.*)

77.     Plaintiff repeats the allegations contained in Paragraphs 1 through 76 as if fully stated herein.

78.     At all times herein relevant, Plaintiff was eligible and qualified for leave under the FMLA.

79.     Plaintiff's mental health issues in the form of depression and anxiety constituted serious health conditions within the meaning of the FMLA.

80.     Plaintiff provided Merkle with appropriate notice of his need to take FMLA leave.

81.     Merkle interfered with Plaintiff's rights under the FMLA by making him delay taking his FMLA leave until certain projects were completed, and then firing Plaintiff after he went out on leave.

82.     Merkle retaliated against Plaintiff in violation of the FMLA by firing him as soon as his FMLA leave was set to expire.

83.     Merkle retaliated against Plaintiff by taking adverse action against him for taking a medical leave of absence.

84.     As a result of Merkle's repeated and willful violations of the FMLA, MCGINLEY has suffered and is entitled to damages, including but not limited to: lost wages and benefits, statutory/liquidated damages, injunctive relief, attorney's fees, costs and expenses.

WHEREFORE, Plaintiff Thomas McGinley requests that the Court award him damages in the form of lost back pay, front pay, liquidated damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to him by law.

11

## COUNT V – VIOLATION OF THE MAINE FMLA
### (26 M.R.S. § 843 *et seq.*)

85.    Plaintiff repeats the allegations contained in Paragraphs 1 through 84 as if fully stated herein.

86.    For all of the reasons stated in Count IV above, unlawful interference with, and retaliation in violation of, the Maine Family Medical Leave Requirements has occurred.

87.    As a result of Defendant's violation of the Maine FMLA, MCGINLEY has suffered and is entitled to damages, including but not limited to: lost wages and benefits, statutory/liquidated damages under the Maine FMLA, injunctive relief, attorney's fees, costs and expenses.

WHEREFORE, Plaintiff Thomas McGinley requests that the Court award her damages in the form of lost back pay, front pay, liquidated damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to him by law.

## COUNT VI – BREACH OF CONTRACT

88.    Plaintiff repeats the allegations contained in Paragraphs 1 through 87 as if fully stated herein.

89.    Various written statements contained in emails discussing MCGINLEY's role with Merkle following the 2016 reorganization created a valid and legally binding contract for continued employment for a definite term.

90.    The contract between MCGINLEY and Merkle was adequately supported by consideration, because MCGINLEY agreed to use his skills and expertise to assist with implementing transition of Merkle workforce to China as part of the 2016 reorg, in exchange for his continued employment until retirement as a part-time Business Operations Leader.

91.    Alternatively, under the circumstances of the parties' negotiation over Plaintiff's continued employment with Merkle, it was objectively reasonable for MCGINLEY to believe that the negotiated terms constituted a legally binding contract implied in fact.

92.    MCGINLEY performed his obligations under the terms of his express and/or implied contract with Merkle.

93.    Merkle breached its express and/or implied contract with MCGINLEY by failing to perform its obligation to employ MCGINLEY for a period of 4 years on a part time basis, until his desired age of retirement.

94.    As a result of Merkle's breach of express and/or implied contract, MCGINLEY has suffered economic losses and other consequential damages.

WHEREFORE, Plaintiff Thomas McGinley requests that the Court award him damages for Merkle's breach of contract, punitive damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to him by law.

## COUNT VII – PROMISSORY ESTOPPEL

95.    Plaintiff repeats the allegations contained in Paragraphs 1 through 94 as if fully stated herein.

96.    Merkle made promises to MCGINLEY about his continued employment with the Company that it reasonably should have expected to induce action or forbearance on his part, namely, that if Plaintiff assisted the Company in implementing the 2016 reorg and used his skills and expertise to help transition workforce to China, he would continue to be employed in the part-time role of a Business Operations Leader for a period of 4 years, until his desired date of retirement.

13

97.     Merkle's promises did in fact induce action and/or forbearance on MCGINLEY's part.

98.     Under the circumstances of this case, injustice can be avoided only by enforcement of Merkle's promises to MCGINLEY and/or an award of compensation to Plaintiff for his justifiable reliance on Merkle's promises.

WHEREFORE, Plaintiff Thomas McGinley requests that the Court award him damages for promissory estoppel, economic and consequential damages, punitive damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to him by law.

## JURY TRIAL DEMAND

Plaintiff Thomas McGinley hereby demands a jury trial on all matters so triable under the laws and Constitution of the United States and the State of Maine.

Dated:  April 29, 2018                    /s/ Laura H. White

_____
Laura H. White, Bar No. 4025
*Attorney for Plaintiff*
BERGEN & PARKINSON, LLC
62 Portland Rd., Suite 25
Kennebunk, ME 04043
(207) 985-7000
*lwhite@bergenparkinson.com*

14